## NEWT BANKS v. STATE.

No. A-7123.   Opinion Filed Feb. 15, 1930.
(287 Pac. 789.)

George W. Martin, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was by information charged with the crime of having in his possession intoxicating liquor, to wit, two half pints of whisky, with the unlawful intent on the part of him, the said Newt Banks, to barter, sell, give away, or otherwise furnish the same unlawfully; was convicted and sentenced to pay a fine of $50 and be imprisoned in the county jail for thirty days.   From the sentence the defendant has appealed to this court.

The testimony in this case is brief.   Jack Ball testified on behalf of the state in substance:   That he had a search warrant for defendant's place, and that he found

two half pints of whisky in the defendant's home. They also found a jug and some bottles, and some corks in a box. He did not remember just where the empty bottles were, they were about the house somewhere. That John Morrow made application for the search warrant. That John Morrow, Jim Williams, and Lee Watson were with him on the search.

John Morrow, a witness on behalf of the state, testified he was with Mr. Ball when he went to defendant's home, and stated Exhibit 1 and 2, which were handed to him, to be whisky. The state then went into the reputation of the defendant's home as being a place where liquor was being kept and sold, and the witness Morrow stated it was bad. On cross-examination by the defendant the witness Morrow was asked the following question:

"Q. Did you know I had any intention of selling these two half pints of whisky? A. No, I didn't."

Jim Williams also testified for the state that he was with the officers when they found the two half pints of whisky; he, too, was asked if he was acquainted with the home of the defendant as being a place where intoxicating liquor was being kept and sold, and answered that he was acquainted with the defendant, but "I cannot say as to that part of it," and, when asked about the reputation of the place, stated it was fairly good.

Jack Ball was recalled and asked the direct question as to whether or not that was the whisky in those bottles he found at Mr. Banks' home on the night of the search. and answered, "It is." On being cross-examined by the defendant as to how he knew it was whisky, he stated, "That is the box and bottles, and the whisky we got out at your house and set out in the jail." This is in substance the testimony on behalf of the state.

Pim Langden testified on behalf of the defendant, and stated he had known the defendant something like twenty years, and stated it looked like if the defendant had been selling whisky he would have caught on to it somewhere. Witness stated he never knew of the defendant selling any whisky. T. N. Allen also testified on behalf of the defendant that he never knew of the defendant selling whisky; that he had known him twelve or fifteen years. Jack Ball was recalled, and was asked by the defendant:

"Mr. Ball, did you ever know I had any pretensions of selling the two half pints of whisky? A. No, I don't know you did."

Mr. Morrow was also asked by the defendant:

"Q. Do you know that I ever had any pretensions of selling this two half pints of whisky? A. No, sir."

After the defendant was convicted, he secured the services of Mr. Martin, an attorney, and Mr. Martin filed a motion for a new trial, in which he assigned five grounds in his motion:

"1. The judgment of the court and verdict of the jury is contrary to law.

"2. That the judgment of the court and verdict of the jury is contrary to the evidence.

"3. That the said verdict of the jury and judgment of the court is not supported by the evidence.

"4. Errors of law occurring in the trial which was objected to by the defendant and excepted to.

"5. The court erred in not directing the jury to return a verdict of not guilty for want of evidence showing the defendant had the two pints of whisky alleged to have been found in his residence, with the intent to sell, barter, give away or otherwise furnish to other persons."

The record further discloses there is not one word in the testimony showing any intention on the part of the defendant to sell, barter, give away, or otherwise furnish to others any part of the two half pints of whisky alleged to have been found in defendant's home. No one testifies to having seen any one around defendant's place or having seen any one going back and forth to his place, or that it was a place where people resorted for the purpose of drinking intoxicating liquors. The quantity of whisky found in the possession of the defendant is not a sufficient quantity to be prima facie evidence under our statute of an intent to sell, barter, give away, or otherwise furnish to others whisky. To warrant the sustaining of a conviction, there must be evidence sufficient to prove that an offense has been committed, and also to connect the defendant with its commission. It is a well-established doctrine that to constitute what the law calls an offense there must be a concurrence of both evil act and an evil intent. After a careful consideration of all the evidence in this case, we fail to find any competent testimony tending to show an intent on the part of the defendant to violate the provisions of the prohibitory liquor laws by bartering, selling, giving away, or otherwise furnishing the same unlawfully to others. The specific intent in this case being the gist of the offense, it must be proven as charged. Frazier v. State, 34 Okla. Cr. 375, 246 Pac. 652.

The quantity of whisky in defendant's possession was less than that required by the statute to make it prima facie evidence of an intent to violate the prohibitory liquor laws; it follows that the court erred in denying the defendant a new trial.

The judgment is reversed.

EDWARDS, P. J., not participating. CHAPPELL, J., concurs.